NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SKINSCIENCE LABS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SKIN DEEP III ONLINE, LLC, THE SKIN CARE PAVILLION, INC. VADIM KAPLUN, ALAN EPSTEIN, <br><br> Defendant. | Civil Action No. 12-cv-01434 (SDW)(MCA) <br><br><br> OPINION <br><br><br> October 3, 2012 |

**WIGENTON**, District Judge.

Before this Court is Defendant Alan Epstein's Motion to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Civil Rule of Procedure 12(b)(6), lack of personal jurisdiction, and in the alternative to transfer venue. This Court, having considered the parties' submissions, decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **DENIES** Defendant's motion in part and **ORDERS** limited discovery.

I. FACTS

Plaintiff, SkinScience Labs, Inc. ("Plaintiff" or "SSL") produces and sells "high quality skin care and cosmetic products." (Compl. ¶ 25.) SSL, founded in 2001 by Dr. Adrienne Denese, "develops, markets, and distributes premium professional skin care products under . . . the Dr. Denese brand and associated trademarks[.]" (*Id.* ¶ 26.) SSL's products are sold under the following trademarks: (1) DENESE, (2) DR. DENESE, (3) DR. ADRIENNE DENESE, (4) DR. DENESE NEW YORK, and (5) SKINSOLUTIOSN BY DR. DENESE, M.D. (*See id.* ¶ 25.) SSL owns the trademarks previously listed. (*See id.* ¶ 27.) SSL's products have enjoyed

publicity from several well-known publications and have acquired public trust among SSL consumers. (*See id.* ¶¶ 31-35.)

Alan Epstein ("Defendant" or "Epstein") is a resident of Florida and has permanently resided there since August 2011. (*See* Def.'s Br. 5.) He was formerly an employee of a sole proprietorship, owned by his father, Elliot Epstein, which markets discount cosmetics and beauty-related items in three stores in Festival Flea Market Mall in Pompano Beach, Florida. (*See id*. at 5-6.) Epstein does business on Amazon.com under the name "Cosmetics Depot," the same business name as his father's flea markets. (*See id* at 6; Pl. Br. 1.) Epstein operates out of his father's warehouse space in Pompano Beach, Florida and occasionally from his stores. (*See* Def.'s Br. 6.)

Epstein has no offices or operations outside of Florida. (*See id*. at 4.) He was formerly a resident of New Jersey, but not since 1999. (*See id*. at 5.) He does not own any property in New Jersey. (*See id*. at 4-5.) In relation to his business, Epstein has not owed or been required to pay taxes in New Jersey. (*See id*. at 5.) He has no employees or agents in New Jersey and has not directed any advertising towards New Jersey. Further, Epstein has not sold any products trademarked by SSL in New Jersey. (*See id.*)

SSL originally identified Epstein as a potential trademark infringer by virtue of his offering for sale the Dr. Denese Sunshield Powder Brush SPF 20 product through Amazon.com under the business name Cosmetics Depot. (*See* Pl.'s Br. 1.) Dr. Denese Sunshield Powder Brush SPF 20 retails for $29.50. (*See id*.) Epstein marketed the product on Amazon.com for $10.98. (*See id*. Ex. A, B.) Epstein made two sales, one to a New York buyer on October 20, 2011 for $7.98, and one to a California buyer on December 13, 2011 for $10.98, the former of which was returned for a refund. (*See* Def.'s Br. 4.)

2

SSL sent Epstein a cease and desist letter on January 4, 2012 that: (1) put Epstein on notice that SSL had reason to believe that his sales were infringing on SSL's trademarks, (2) demanded that Epstein cease selling SSL products, and (3) requested information about the source of Epstein's purchases of the SSL products and his total sales of SSL products. (*See id*.; Certification of Robert B. Hander ("Hander Cert") Ex. C.) As a result, Epstein discontinued marketing the "Dr. Denese Sunshield Powder Brush SPF 20." (*See* Def.'s Br. 6.) However, Epstein stated that he does not recall where he bought or who sold him the "Dr. Denese Sunshield Powder Brush" product.[1] (*See* Def.'s Br. 6.) He also asserts that he did not know whether or not the product was legitimate or counterfeit. (*See id*.) Epstein maintains that since he worked at a flea market with his father, he bought products from many different people, including some who came to the flea market "off the street." (*See* Pl.'s Br. 2.)

On March 17, 2012, Plaintiff filed its complaint. (*See* Compl. at 22.) Plaintiff's complaint contains five causes of action: (1) trademark infringement in violation of § 32(1) under 15 U.S.C. §1125(a); (2) false designation of origin and unfair competition in violation of §43(a) under 15 U.S.C. § 1125(a); (3) common law trademark and unfair competition; 4) trafficking in counterfeit marks under N.J.S.A 56:30-13.6; and (5) unfair competition under N.J.S.A 56:4-1. (*See* Compl.) On May 1, 2012, Defendant filed his Motion to Dismiss and Plaintiff responded on May 21, 2012. (*See* Def.'s Br. 10; *see* Pl.'s Br. 7.)

## II.   LEGAL STANDARD

### a.   *Motion for Lack of Personal Jurisdiction*

Federal Rule of Civil Procedure 4(e) "authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Pennzoil Prod. Co. v. Colelli & Assoc., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998). New Jersey's

---

[1] Inconsistently, Epstein states in his brief that he purchases the products he sells from his father. (*See* Def.'s Br. 5.)

3

long-arm statute permits personal jurisdiction over non-resident defendants to the extent allowed by the Due Process Clause of the Fourteenth Amendment. N.J. Ct. R. 4:4-4; *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d. Cir. 1981), *cert. denied*, 454 U.S. 1085 (1981). Therefore, this Court's analysis is strictly limited to determining whether personal jurisdiction over Defendant is proper and comports with due process. This Court is guided by the two-part analysis delineated in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). First, this Court must determine whether minimum contacts exist between Defendant and the forum state. *See id.* at 476-77. If this Court finds that the requisite minimum contacts are present, it must then consider whether the exercise of personal jurisdiction would nevertheless offend "traditional notions of fair play and substantial justice" inherent in the Due Process Clause. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). [2]

Where a defendant files a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating, with "reasonable particularity," that a defendant's minimum contacts with the forum state are sufficient to establish personal jurisdiction. *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 145-46 (3d Cir. 1992); *Time Share Vacation v. Atl. Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984). When a plaintiff's burden is triggered before discovery has commenced, the plaintiff need only proffer a prima facie case to establish personal jurisdiction. *See LaRose v. Spondo Mfg., Inc.*, 712 F. Supp. 455, 458 (D.N.J. 1989). Only upon demonstration of sufficient minimum contacts between a defendant and the forum state may a court consider whether exercise of jurisdiction

---

[2] This Court takes notice that a plaintiff may also seek personal jurisdiction on a general basis based on a defendant's "continuous and systematic" contacts with the forum state. *Int'l. Shoe Co.*, 326 U.S. at 317; *see also Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587 (3d Cir 1982). However, where, as here, Defendant is alleged to have not entered the State of New Jersey, Plaintiff's cause of action can arise only "out of the [Defendant's] contacts with the forum . . . [thereby requiring this Court] . . . to exercise 'specific jurisdiction.'" *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)).

would comport with "fair play and substantial justice." *Burger King*, 471 U.S. at 476 (quoting *Int'l. Shoe*, 326 U.S. at 320); *Pennzoil*, 149 F.3d at 201.  In reviewing a motion brought under Federal Rule of Civil Procedure 12(b)(2), a court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Cartaret Sav. Bank, F.A.*, 954 F.2d at 142 n.1.

      b.  *Motion to Dismiss*

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (2008) (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Id.* (quoting *Twombly*, 550 U.S. at 556-57, 570).

Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failure to "'show[] . . . that the pleader is entitled to relief'" as required by Rule 8(a)(2). *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

As a general rule, a district court deciding a motion to dismiss may consider only the contents of the pleadings. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, a notable exception to that general rule is that "'[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim." *Cooper v. Samsung Elecs. Am., Inc.,* 374 F. App'x 250, 253 n.3 (3d Cir. 2010) (alterations in original) (quoting *Pryor*, 288 F.3d at 560).

   c. *Motion to Transfer*

Under Title 28, § 1404(a) of the United States Code, district courts may transfer civil actions to any other districts where venue would have been proper "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a) (2006). The purpose of § 1404(a) is twofold: first, to avoid wasting "time, energy and money[,]" and second, to "protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960).

A decision to transfer venue is based on "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by a transfer to a different forum*." Jumara v. State Farm Ins.*, 55 F.3d 873, 879 (3d Cir. 1995). The party seeking transfer bears the burden of establishing that transfer is necessary. *See*

6

*id.* The moving party must "show the proposed alternative forum is not only adequate, but also more appropriate than the present forum." *Hoffer v. InfoSpace.com, Inc.*, 102 F. Supp.2d 556, 572 (D.N.J. 2000).

The decision of whether to transfer a case is committed to the trial court's sound discretion. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (discussing the trial court's discretion under § 1404(a) to adjudicate motions to transfer venue according to an "individualized, case-by-case consideration of convenience and fairness") (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *Cadapult Graphic Sys. v. Tektronix, Inc.*, 98 F. Supp.2d 560, 564 (D.N.J. 2000). In determining whether to grant a motion to transfer pursuant to § 1404(a), a reviewing court must first make a threshold determination as to whether the action could have been properly brought in the transferee district. *See id.* at 570; *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). The movant must demonstrate "the proprietary of venue in the transferee district and jurisdiction over all of the defendants." *LG Elec., Inc. v. First Int'l Computer, Inc.*, 102 F. Supp.2d 574, 586 (D.N.J. 2001). After the court determines that the jurisdiction and venue would be proper in the transferee district, the court must evaluate two broad categories of factors identified by the Third Circuit Court of Appeals. *Jumara*, 55 F.3d at 879-80.

The first category includes considerations relevant to the private interests of the litigants. *See id.* at 879. These interests are: (1) "plaintiff's forum preference;" (2) "defendant's preference;" (3) "whether the claim arose elsewhere;" (4) "the convenience of the parties as indicated by their relative physical and financial condition;" (5) "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one

7

of the fora;" and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum." *Id.* (internal citations omitted).

The second broad category includes the public's interests in a fair and efficient administration of justice. *See id.* at 879-80. Considerations here include: (1) "the enforceability of the judgment;" (2) "practical considerations that could make the trial easy, expeditious, or inexpensive;"(3) "the relative administrative difficulty in the two fora resulting from court congestion;" (4) "the local interest in deciding local controversies at home;" (5) "the public policies of the fora;" and (6)"the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (internal citations omitted). Neither list of public nor private factors is exhaustive; rather, the analysis under § 1404(a) is flexible and individualized, based on the unique facts of each case. *Lawrence v. Xerox Corp.*, 56 F. Supp.2d 442, 449 (D.N.J. 1999).

### III. DISCUSSION

#### a. Personal Jurisdiction

Personal jurisdiction is established through a minimum contacts analysis when the defendant is not present in the forum. *Int'l Shoe Co.*, 326 U.S. at 316. A defendant is subject to suit in a forum if the defendant purposely conducted acts towards the forum and the claim arises out of that purposeful conduct. *See id*. at 319; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The defendant's minimum contacts with the forum must be of sufficient quality and nature so that a suit in the forum does not offend "'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316, 319 (internal citations omitted); *Denckla*, 357 U.S. at 253. That is, in order to establish personal jurisdiction a plaintiff must establish that: (1) defendant had minimum contacts with the forum, and (2) based on those contacts a court's exercise of specific jurisdiction "would comport with 'fair play and substantial justice.'" *Burger King Corp.*, 471 U.S. at 476

(internal citation omitted). "[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13 (1978)). If "the plaintiff's claim is not clearly frivolous [as to the basis for personal jurisdiction], the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden." *Id.* (citing *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983)).

Epstein argues that he lacks the necessary contacts with New Jersey to permit the fair exercise of jurisdiction by this Court. (*See* Def.'s Br. 8)  Epstein specifically asserts that he did not sell the products at issue in New Jersey, does not direct any advertising to New Jersey, and has no employees or agents in New Jersey. (*See id.*)  SSL alleges in its brief that Epstein has advertised its products through Amazon.com, and that by doing so, Epstein intentionally solicited purchasers in states outside of Florida, including New Jersey. (*See* Pl.'s Br. 5.)  SSL also contends that Epstein has marketed his products through his own website, ComesticsDepot.com. (*See id.*)  Despite SSL's attempt to demonstrate a preliminary showing of personal jurisdiction, it is apparent that Epstein's contacts with New Jersey are uncertain.  The facts of this case require further development in order to permit this Court to undergo a jurisdictional analysis.  Therefore, the parties will be permitted to engage in jurisdictional discovery.  Specifically, jurisdictional discovery will reveal whether Epstein purposefully availed himself of doing business in New Jersey.

Because it is unclear whether this Court has personal jurisdiction over Defendant, this Court need not reach the issue of a venue transfer.

      b. *12(b)(6)*

Even though this Court declines to reach a decision on the issues of personal jurisdiction and venue, this Court will preliminarily examine the portion of Defendant's motion that relies on Federal Rule of Civil Procedure 12(b)(6).

Epstein contends that SSL fails to assert any factual basis in the complaint that supports SSL' claims against him. (Def.'s Br. 4, 7.)

SSL alleges five causes of action against Epstein: (1) trademark infringement in violation of § 32(1) under 15 U.S.C. §1125(a), (Compl. ¶¶ 61-63); (2) false designation of origin and unfair competition in violation of §43(a) under 15 U.S.C. § 1125(a), (Compl. ¶¶ 64-67); (3) common law trademark and unfair competition, (Compl. ¶¶ 68-75 ); 4) trafficking in counterfeit marks under N.J.S.A 56:30-13.6, (Compl. ¶¶ 76-78); and (5) unfair competition under N.J.S.A 56:4-1. (Compl. ¶¶ 79-83). All of the claims set forth by Plaintiff share similar elements. *See Video Pipeline, Inc. v. Buena Vista Home Entm't Inc.*, 210 F. Supp.2d 522, 560-561 (D.N.J. 2002) ("Section 56:4-1 of the N.J.S.A. is the statutory equivalent of section 43(a)(1) of the Lanham Act, and violation of that section leads to a finding of liability under N.J.S.A. 56:4-1."); *see Nat'l Football League Props, Inc. v. New Jersey Giants, Inc.*, 637 F. Supp. 507, 519-20 (D.N.J. 1986) ("'the federal law of unfair competition [as codified in 15 U.S.C. § 1125] is not significantly different, as it bears upon this case, from that of New Jersey'"); *see Fancaster, Inc. v. Comcast Corp.*, 832 F. Supp. 2d 380, 410 (D.N.J. 2011) ("A claim of trademark infringement is established when the plaintiff proves that: (1) its mark is valid and legally protectable; (2) it owns the mark; and (3) the defendant's use of the mark to identify its goods or services is likely to create confusion concerning the origin of those goods or services."); *see* N.J. Stat. Ann. §56:3-13.16 (West 2004) (stating that it is a violation of the trafficking in counterfeit marks law if

"[t]he use, without consent of the owner or designee, of any reproduction, counterfeit, copy, or colorable imitation of a mark in connection with the sale, distribution, offering for sale, or advertising in [New Jersey] of any goods or service on or in connection with which the use is likely to cause confusion or mistake or to deceive as to the source of origin of the goods or services."). SSL's claims can be summarized as requiring allegations that assert that: (1) SSL has rights to the trademarks for the product at issue, (2) Epstein, without SSL's consent, used, distributed, and profited from sale of the trademarked products, and (3) Epstein's conduct will lead or is likely to create confusion as to the origin of the product.

Contrary to Epstein's contention, the complaint appears to sufficiently plead facts necessary to support the claims asserted, and provides more than just "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. To illustrate, SSL alleges that it owns the trademark at issue, (*see* Compl. ¶ 27), that it is the producer and seller of the trademarked products (*see id.* ¶¶25-30), that said products were offered for sale by Epstein (*id.* ¶¶ 36, 37, 45, 46), that he was not authorized or licensed to sell the products (*id.* ¶38, 45, 46), and that the products sold by Epstein were either wrongfully obtained or counterfeit and contained SSL's trademarks (*id.* ¶¶ 36, 37, 45, 46). Accordingly, Epstein's argument appear to lack merit as SSL's claims seem to be sufficiently pled.

Epstein also argues that SSL failed to adequately plead its trademark claims because it did not have "knowledge or true belief that [Epstein] has actually engaged in wrongdoing." (Def.'s Br. 7-8.) However, the standard for reviewing a motion to dismiss does not require "probability" that the misconduct occurred, but rather requires that the claim has "facial plausibility." *Iqbal,* 556 U.S. at 678. Therefore, Epstein's argument appears to be misplaced.

**IV.     CONCLUSION**

For the reasons set forth above, Defendant's 12(b)(6) is **DENIED**.  This Court reserves the right to rule on the balance of the issues pending jurisdictional discovery.

<u>s/Susan D. Wigenton, U.S.D.J.</u>

Orig:   Clerk
cc:     Hon. Madeline Cox Arleo, U.S.M.J.
        Parties